UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOSE GONZALEZ                                :
                                             :          PRISONER CASE NO.
        v.                                   :          3:03-cv-2264 (SRU) (WIG)
                                             :
THERESA LANTZ, et al.[1]                     :


RULING ON DEFENDANTS' MOTION TO DISMISS

        Jose Gonzalez, an inmate at the Osborn Correctional Institution in Somers, Connecticut,

filed this civil rights action pro se pursuant to 28 U.S.C. § 1915.  Gonzalez alleges that the

defendants were deliberately indifferent to injuries he sustained to his left leg, ankle and foot in

July 2000.  Pending before the court is defendant Theresa Lantz's motion to dismiss.  For the

reasons that follow, the motion is granted in substantial part.

I.      Standard of Review

        When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual

allegations in the complaint and draws inferences from these allegations in the light most

favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Flores v. Southern

Peru Copper Corp., 343 F.3d 140, 143 (2d Cir. 2003).  Dismissal is inappropriate unless it

appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would

entitle him to relief.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999); Sweet

---

[1]  The named defendants are Commissioner of Correction Theresa Lantz, John Doe, M.D. and
Jane Doe, R.N.

v. Sheahan, 235 F.3d 80, 83 (2d Cir. 2000).  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" York v. Association of Bar of City of New York, 286 F.3d 122, 125 (2d Cir.) (quoting Scheuer, 416 U.S. at 236), cert. denied, 537 U.S. 1089 (2002).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York, 375 F.3d 168, 176 (2d Cir. 2004) (quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)).

II.     Facts

       For the purposes of deciding this motion, the court assumes that the following facts alleged in the complaint are true.

       On July 28, 2000, at Walker Correctional Institution, Gonzalez slipped and fell down the stairs.  He injured his left leg, ankle and foot.  Prison employees transported Gonzalez to the medical unit in a wheelchair and medical personnel evaluated and treated his injuries.  Prison employees later transported Gonzalez to the University of Connecticut Health Center.  There, medical personnel performed x-rays and prescribed pain medication.  Gonzalez used crutches and elastic brace and took pain medication for four months after the accident.  In September 2000, an x-ray showed bone chips in plaintiff's left ankle.

       Gonzalez alleges that doctors and nurses from various prison facilities and the University of Connecticut Health Center have done little to remove the bone chips or treat his injuries in the three years since his accident and have denied him medical procedures including surgery.  He

2

claims that he is constantly in pain.  Gonzalez seeks declaratory and injunctive relief and monetary damages.

III.    Discussion

Lantz moves to dismiss this action on six grounds.  She argues that: (1) the claims against her in her official capacity are barred by the Eleventh Amendment, (2) Gonzalez has failed to exhaust his administrative remedies, (3)  Gonzalez has failed to allege her personal involvement in the claimed unconstitutional conduct, (4) Gonzalez has failed to state a claim of deliberate indifference to medical needs, (5) she is entitled to sovereign and statutory immunity on the state law claims, and (6) she is entitled to qualified immunity on the federal claims.

A.    Eleventh Amendment Immunity

Lantz first argues that all claims for damages against her in her official capacity are barred by the Eleventh Amendment.  Gonzalez does not address this argument.     Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment.  See Florida Dep't of State v. Treasure Salvors, Inc., 458 U.S. 670, 684 (1982). Section 1983 does not override a state's Eleventh Amendment immunity.  See Quern v. Jordan, 440 U.S. 332, 342 (1979).  The Eleventh Amendment immunity that protects the state from suits for monetary relief also protects state officials sued for damages in their official capacities.  See Kentucky v. Graham, 473 U.S. 159 (1985).  A suit against a defendant in her official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury. See Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 n.11 (1984).

3

Gonzalez sued Lantz in her official and individual capacities and seeks both injunctive and declaratory relief as well as damages.  Because the Eleventh Amendment bars an award of damages against Lantz in her official capacity, the motion to dismiss those claims is granted.

B.      Exhaustion of Administrative Remedies

Lantz next argues that Gonzalez has not exhausted his administrative remedies with regard to all claims for relief.  Gonzalez does not address this argument.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), requires an inmate to exhaust his administrative remedies before bringing a section 1983 action with respect to prison conditions.  The Supreme Court has recently held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  An inmate must exhaust administrative remedies before filing any type of action in federal court regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  See Booth v. Churner, 532 U.S. 731, 741 (2001).  This requirement of complete exhaustion of administrative remedies must be satisfied before a federal action is commenced.  See Neal v. Goord, 267 F.3d 116, 122 (2d Cir. 2001) (holding that an inmate may not avoid the requirements of 42 U.S.C. § 1997e(a) by exhausting administrative remedies after filing a civil rights action in federal court).

The Second Circuit considers the failure to exhaust administrative remedies an affirmative defense.  "A defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements [that plaintiff first exhaust

4

all administrative remedies]." <u>Jenkins v. Haubert</u>, 179 F.3d 19, 28-29 (2d Cir. 1999).  By

characterizing non-exhaustion as an affirmative defense, the Second Circuit suggests that the

issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss.

Rather, a defendant must present proof of non-exhaustion.  <u>See also</u> <u>Reyes v. Punzal</u>, 206 F.

Supp. 2d 431, 433 (W.D.N.Y. 2002) ("in the Second Circuit, failure to comply with the PLRA's

exhaustion requirement is viewed as an affirmative defense . . . and . . . defendant bears the

burden of proving plaintiff's failure to comply with the exhaustion requirement") (citations

omitted).

        The court takes judicial notice of the Department of Correction Administrative Directive

9.6, entitled Inmate Grievances.  Prior to October 2002, a disagreement about medical diagnosis

or treatment was not covered by the grievance process.  On October 24, 2002, Administrative

Directive 9.6, section 6C, entitled Treatment and Diagnosis Review, was added.  This section

provides:

> If an inmate wishes to appeal a medical diagnosis or prescribed
> treatment, the inmate shall request a Physician Sick Call
> Appointment at no cost to the inmate.  This appointment will
> provide the inmate an opportunity to discuss the issue with the
> Physician.  The contents of this meeting, to include the final
> decision on diagnosis and/or treatment, shall be explicitly
> documented in the inmate's medical file.  Only one appeal per
> diagnosis and/or treatment shall be permitted.

Gonzalez filed this action in December 2003.  Thus, at the time Gonzalez filed this lawsuit, the

new amendments to the Administrative Directive 9.6 regarding medical diagnoses were in effect

and Gonzalez was required to exhaust his administrative remedies for all claims in the complaint

prior to filing suit.

In his complaint, Gonzalez indicates that he has not exhausted his administrative remedies, but he does claim that he made repeated trips to the medical unit and sick call requesting treatment for the injuries to his ankle and knee.  He also claims that he does not speak or understand English and no one in the medical department provided him with an interpreter. These allegations could be construed as a claim that plaintiff was not able to properly exhaust his administrative remedies because he did not speak or understand English and did not have a copy of the grievance procedures in Spanish.  Because exhaustion of administrative remedies is an affirmative defense, the burden of demonstrating failure to exhaust rests with defendants.  The burden usually is satisfied by affidavits from the grievance coordinator or medical records employee documenting the grievances filed or medical appointments requested by an inmate and the absence of any grievance or request for medical appointment regarding a particular condition. Such evidence, even if it had been provided by Lantz, could not be considered on a motion to dismiss.  The court cannot conclude that Gonzalez would not be able to provide evidence of his attempts to exhaust his administrative remedies regarding his claims of improper or inadequate medical treatment of his injuries or provide evidence that special circumstances existed to excuse his failure to fully or properly exhaust his administrative remedies.  See Giano v. Goord, 380 F.3d. 670, 676 (2d Cir. 2004) (plaintiff's failure to exhaust claim through grievance process was justified because "plaintiff reasonably interpreted DOCS regulations to mean that his only administrative recourse was to appeal his disciplinary conviction.");  Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir.2004) (remanding case to District Court to determine whether prison officials' actions estopped them from asserting argument that prison inmate failed to exhaust

6

administrative remedies prior to filing suit).  Because the court must accept Gonzalez's
allegations as true, Lantz's motion to dismiss on the ground that Gonzalez failed to exhaust his
administrative remedies is denied.  Lantz may revisit this argument in a motion for summary
judgment or at trial.

      C.     <u>Personal Involvement and Failure to State a Claim of Deliberate Indifference</u>

      Lantz argues that Gonzalez has failed to allege her personal involvement in the alleged
denial of proper medical care.  Lantz further argues that Gonzalez has failed to allege that she
was deliberately indifferent to his medical needs.

      In order to state a claim for damages under section 1983, a plaintiff must demonstrate the
defendant's direct or personal involvement in the actions that are alleged to have caused the
constitutional deprivation.  See <u>Gill v. Mooney</u>, 824 F.2d 192, 196 (2d. Cir. 1987); <u>McKinnon v.
Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977), <u>cert. denied</u>, 434 U.S. 1087 (1978). "A supervisor
may not be held liable under section 1983 merely because his subordinate committed a
constitutional tort."  <u>Leonard v. Poe</u>, 282 F.3d 123, 140 (2d Cir. 2002).  Section 1983 imposes
liability only on the official causing the violation.  Thus, the doctrine of respondeat superior is
inapplicable in section 1983 cases.  See <u>Blyden v. Mancusi</u>, 186 F.3d 252, 264 (2d Cir. 1999);
<u>Prince v. Edwards</u>, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000)
("Liability may not be premised on the respondeat superior or vicarious liability doctrines, . . .
nor may a defendant be liable merely by his connection to the events through links in the chain of
command.") (internal quotations and citation omitted).

      [A] supervisor may be found liable for his deliberate indifference

7

> to the rights of others by his failure to act on information indicating
> unconstitutional acts were occurring or for his gross negligence in
> failing to supervise his subordinates who commit such wrongful
> acts, provided that the plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his] injury.

Leonard, 282 F.3d at 140.

The Eighth Amendment protects inmates from deliberate indifference by prison officials to their serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). To prevail on such a claim, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. There are both subjective and objective components to the deliberate indifference standard. See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). In addition to demonstrating a serious medical need to satisfy the objective component of the deliberate indifference standard, an inmate also must present evidence that, subjectively, the charged prison official acted with "a sufficiently culpable state of mind." Hathaway, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Here, Commissioner Lantz is named as a defendant due to her supervisory role in the Department of Correction. There are no specific factual allegations regarding Commissioner

8

Lantz.  Rather, Gonzalez alleges that unidentified doctors and nurses have failed to properly treat

him.  Thus, there are no allegations that Commissioner Lantz was aware of Gonzalez's injuries

or involved in the medical treatment of those injuries.  Furthermore, a correctional official, like

Commissioner Lantz, who is not a physician or nurse, is entitled to defer to the opinions of

trained personnel in the context of medical issues.  See, e.g., Long v. Nix, 86 F.3d 761, 765 n.4

(8th Cir. 1996) (agreeing with district court's determination that prison officials were entitled to

rely on opinions of medical staff); Rodriguez v. McGinnis, 2004 WL 1145911, at *18 (W.D.N.Y.

May 18, 2004) ("it appears to be well accepted in this Circuit that in general supervisory prison

officials may not be found liable for constitutional violations involving medical care where they

reasonably relied on the opinions of prison medical staff") (citing cases).  Here, Gonzalez has

failed to allege that Lantz was aware of his injuries, involved in the treatment of those injuries,

deliberately indifferent to his injuries or grossly negligent in supervising medical personnel who

treated the injuries.  The motion to dismiss all section 1983 claims against Lantz is granted.

       D.     State Law Claims

     Gonzalez alleges that the defendants were negligent and committed medical malpractice.

Lantz argues that the doctrines of sovereign and statutory immunity bar Gonzalez's state law

claims against her in her individual and official capacities.  Gonzalez does not respond to this

argument.

     The doctrine of sovereign immunity "protects state officials and employees from lawsuits

resulting from the performance of their duty ... and protects the state against lawsuits as well as

protecting against liability."  Hultman v. Blumenthal, 67 Conn. App. 613, 620, 787 A.2d 666,

672-73, cert. denied, 259 Conn. 929, 793 A.2d 253 (2002).  Accordingly, any state law claims against Lantz in her official capacity are barred by sovereign immunity.

Under Conn. Gen. Stat. § 4-165, state officials and employees who are sued in their individual capacities possess a limited immunity from suit.   Under that statute, "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his duties or within the scope of his employment." Conn. Gen. Stat. § 4-165.  Thus, "[s]tate employees do not ... have statutory immunity for wanton, reckless or malicious actions, or for actions not performed within the scope of their employment."  Miller v. Egan, 265 Conn. 301, 319, 828 A.2d 549, 555 (2003).

Gonzalez has not alleged that Lantz acted wantonly, recklessly, maliciously or outside the scope of her official duties in failing to make sure that the John Doe doctor and the Jane Doe nurse provided him with proper medical treatment.  Accordingly, Gonzalez's negligence and medical malpractice claims against Lantz in her individual capacity are barred by the statutory immunity provided by Conn. Gen. Stat. § 4-165.  The motion to dismiss the state law claims against Lantz in her official and individual capacities is granted.

IV.    Conclusion

Lantz's Motion to Dismiss [**doc. # 14**] is **GRANTED** in substantial part.  All claims against Lantz are **DISMISSED** except the claims under the Americans With Disabilities Act and the Rehabilitation Act, which Lantz did not address in the motion to dismiss.

In April 2004, the court directed Gonzalez to file an amended complaint identifying the John and Jane Doe defendants.  The court cautioned Gonzalez that his failure to identify the Doe

10

defendants, might result in the dismissal of the claims against them.  To date, Gonzalez has not identified the John Doe doctor or the Jane Doe nurse named as defendants in this action and has not filed an amended complaint.

Federal Rule of Civil Procedure 4(m) states that "if service of the summons and complaint is not made upon the defendants within 120 days after the filing of the complaint, the court . . . upon its own initiative after notice to the plaintiff, shall dismiss the case without prejudice . . . ."  In the instant case, the 120-day period provided for service has elapsed and Gonzalez has not filed an amended complaint identifying the John Doe or the Jane Doe defendants and the complaint has not been served on either defendant.  **If Gonzalez wants to proceed against these defendants, he must identify them by name by filing an amended complaint within thirty days of the date of this order.**  Failure to do so will result in dismissal of this action against the John Doe and Jane Doe defendants pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, and the case will proceed only on the Americans With Disabilities Act and Rehabilitation Act claims against Commissioner Lantz.

**SO ORDERED** this 20th day of July 2005, at Bridgeport, Connecticut.


  /s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge